IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MICHAEL LABRICE, | : | |
| Plaintiff, | : | |
| | : | CIVIL ACTION |
| v. | : | 19-4377 |
| | : | |
| CITY OF PHILADELPHIA et al., | : | |
| | : | |
| Defendants. | : | |

**MEMORANDUM**

This is an employment discrimination action brought by Plaintiff, Michael Labrice, against the City of Philadelphia, Philadelphia Police Department Chief Inspector Christopher Flacco, and former Philadelphia Police Commissioner Richard Ross (collectively, "Defendants").

Mr. Labrice is a member of the Philadelphia Police Department. In March 2018, he was promoted from lieutenant to captain. Pursuant to the Philadelphia Civil Service Regulations, Mr. Labrice was required to serve six months in the probationary status of captain before becoming a permanent captain. During his six-month probationary period, Mr. Labrice suffered a traumatic brain injury that disabled him and caused him to take medical leave.

While Mr. Labrice was out on medical leave, his probationary period was frozen. Nevertheless, while Mr. Labrice was on leave, Defendants demoted Mr. Labrice from his probationary position of captain.[1] Defendants did not notify Mr. Labrice of his demotion when it happened. Instead, Mr. Labrice returned to work on April 15, 2019, and worked for an additional month as a probationary captain. During this time, he was unaware that Defendants had already

---

[1] Although the parties disagree on when the initial decision to demote Mr. Labrice occurred, it is undisputed that Mr. Labrice's demotion was formally approved by Philadelphia Police Commissioner Richard Ross on April 12, 2019, when Mr. Labrice was out on medical leave. *See* Defs. Amended Pretrial Memorandum, ECF No. 102, at 4.

1

recommended and approved his demotion to lieutenant. On May 14, 2019, Defendants notified Mr. Labrice of his demotion. Since his demotion, Mr. Labrice has worked as a lieutenant for the Police Department.

Mr. Labrice alleges that his demotion was motivated by animus towards his disability and/or his use of medical leave, in violation of the Americans with Disabilities Act ("ADA"), the Pennsylvania Human Relations Act ("PHRA"),[2] and the Family and Medical Leave Act ("FMLA"). In April 2025, the Court held a six-day jury trial on Mr. Labrice's claims. The claims submitted to the jury were (1) disability discrimination under the ADA;[3] (2) retaliation for taking medical leave under the ADA;[4] (3) interference under the FMLA; and (4) retaliation for exercising the right to take leave under the FMLA.

On April 15, 2025, the jury returned its verdict. The jury found that Mr. Labrice prevailed on his claims of disability discrimination under the ADA against all Defendants. On these claims of disability discrimination, the jury also found that all Defendants established the "same-decision" defense. This means that each Defendant proved they would have made the same decision even if Mr. Labrice's disability had played no role in the employment decision. This finding precludes certain remedies. The jury found, however, that Mr. Labrice prevailed on his claims of retaliation for taking medical leave under the ADA against all Defendants. On the FMLA claims, the jury found in favor of Defendants.

---

[2] "Because liability under the PHRA is premised upon language similar to that of the ADA and because that language is generally interpreted in accordance with the judicial construction of the ADA, [the Court] address[es] only the language of the ADA in [its] analysis." *Gagliardo v. Connaught Laboratories, Inc.*, 311 F.3d 565, 568 n.2 (3d Cir. 2002).

[3] These claims are asserted under the ADA and the PHRA, and, as discussed *supra* note 2, the Court addresses only the language of the ADA in its analysis.

[4] These claims are asserted under the ADA and the PHRA, and, as discussed *supra* note 2, the Court addresses only the language of the ADA in its analysis.

2

The jury also provided an advisory opinion on the amount, if any, that Mr. Labrice would be entitled to for front pay and back pay if he prevailed on his claim(s) and were entitled to such remedies.[5] *See Donlin v. Philips Lighting N. Am. Corp.*, 581 F.3d 73, 78 n.1 (3d Cir. 2009) ("The jury's role [is] only advisory on the issue of damages because back pay and front pay are equitable remedies to be determined by the court.").[6] The jury advised that, if Mr. Labrice is entitled to back pay and/or front pay, he would be entitled to $130,000.00 in back pay and $0.00 in front pay.

The Court now determines the appropriate remedies for Mr. Labrice's successful claims of disability discrimination and retaliation for taking medical leave under the ADA.

### I.    Count 1: Disability Discrimination

The remedies available to Mr. Labrice for his successful disability discrimination claims are restricted based on the "same-decision" defense.

For ADA mixed-motive discrimination claims, "the same-decision defense limits remedies rather than providing a defense to liability."[7] This is because the ADA explicitly relies on the "powers, remedies, and procedures set forth in . . . [42 U.S.C.] 2000e-5,"[8] and, pursuant to 42 U.S.C. 2000e-5, when a plaintiff proves a violation but a defendant demonstrates they "would have taken the same action in the absence of the impermissible motivating factor," the Court "may grant

---

[5] *See* Verdict Sheet, ECF No. 128, at 9 ("If Mr. Labrice prevails on any of the claims, he may be entitled to back pay and/or front pay. 24. What amount, if any, would Mr. Labrice be entitled to for back pay? 25. What amount, if any, would Mr. Labrice be entitled to for front pay?").

[6] *Donlin v. Philips Lighting N. Am. Corp.*, 581 F.3d 73 (3d Cir. 2009) addresses back pay and front pay under Title VII of the Civil Rights Act of 1964 ("Title VII"), and the holding applies here because the ADA explicitly relies on Title VII's enforcement tools and remedies. *See* 42 U.S.C. § 12117(a).

[7] Third Circuit Model Instructions § 10.1.2, at 26 (June 2024 ed.) ("For Title VII mixed-motive discrimination claims, the same-decision defense limits remedies rather than providing a defense to liability. Noting that the Americans with Disabilities Act borrows enforcement and remedial provisions from Title VII, Comment 9.1.1 takes the view that the same-decision defense similarly limits remedies for mixed-motive claims under the ADA.") (internal citations omitted).

[8] 42 U.S.C. § 12117(a).

3

. . . attorney's fees and costs demonstrated to be directly attributable only to the pursuit of [that] claim," but the Court "shall not award damages or issue an order requiring . . . reinstatement, hiring, promotion, or payment [described in this section, including back pay]."[9] Accordingly, when an ADA disability discrimination plaintiff proves a violation but a defendant demonstrates the "same-decision" defense, attorneys' fees and costs are available to the Plaintiff, but compensatory damages, reinstatement, and back pay are precluded.

The jury found that Mr. Labrice proved his ADA disability discrimination claims but also that all Defendants established the "same-decision" defense. Thus—on his disability discrimination claims—Mr. Labrice is only entitled to recover attorneys' fees and costs[10] and $1.00 in nominal damages awarded by the jury. *See Uzuegbunam v. Preczewski*, 592 U.S. 279, 288 (2021) ("[A] party whose rights are invaded can always recover nominal damages without furnishing any evidence of actual damage.").

## II.     Count 2: ADA Retaliation

"[R]etaliation claims under the ADA are analyzed under the same framework as Title VII discrimination claims." *Shellenberger v. Summit Bancorp, Inc.*, 318 F.3d 183, 188 (3d Cir. 2003). And ADA plaintiffs "ha[ve] the same remedies as provided by [Title VII]." *Spencer v. Wal-Mart Stores, Inc.*, 469 F.3d 311, 315 n.3 (3d Cir. 2006).

A plaintiff who prevails on an ADA retaliation claim is "not entitled to legal damages," but may be entitled to "equitable remedies" including back pay and reinstatement, as prescribed in 42 U.S.C. § 2000e-5(g)(1).[11] *See* 42 U.S.C. § 2000e-5(g)(1) ("[T]he court may . . . order such

---

[9] 42 U.S.C. §2000e-(5)(g)(2)(B).
[10] Mr. Labrice has filed a Motion for Attorneys' Fees (ECF No. 136) and Bill of Costs (ECF No. 135). The Court will analyze this motion and determine the appropriate attorneys' fees and costs after remedies are finalized and any appeals are taken. *See* Order Staying Response Deadlines, ECF No. 152.
[11] *D'Agostino v. Secretary United States Air Force*, No. 22-2835, 2024 WL 1209745, at *5 (3d Cir. Mar. 20, 2024)

4

affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, with or without back pay . . . or any other equitable relief as the court deems appropriate."). The Court now considers these equitable remedies.

### a. Defendants' Arguments Against Equitable Remedies

Defendants ask that the Court use its discretion to decline to award any equitable remedies for Mr. Labrice's ADA retaliation claims based on four objections. The Court interprets Defendants' argument to be that—because of these alleged issues—equity requires that no remedies be awarded to Mr. Labrice. For the following reasons, the Court declines to use its discretion as Defendants request.

### i. Mixed Motive Instruction

First, Defendants object to the award of any remedies because of the Court's decision to use mixed-motive jury instructions. The Court understands Defendants' position to be that the Court's instructions were flawed because (i) it was incorrect to use mixed-motive instructions, and (ii) confusion was caused by the Court's use of mixed-motive instructions for Mr. Labrice's ADA disability discrimination claims ("Count 1") and FMLA retaliation claims ("Count 4"), but not Mr. Labrice's ADA retaliation claims ("Count 2"). Both arguments are unconvincing.

The Court's use of mixed-motive instructions was appropriate based on the evidence presented at trial. ADA discriminatory-treatment claims are governed by the same standards applicable to Title VII claims. *See Raytheon Co. v. Hernandez*, 540 U.S. 44, 49 n.3 (2003). Thus, like a Title VII plaintiff, an ADA plaintiff "may make a claim for discrimination under either the pretext theory set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), or the mixed-

---

(quoting *Israelitt v. Enter. Servs. LLC*, 78 F.4th 647, 660 (4th Cir. 2023)).

motive theory set forth in *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989)." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (cleaned up). "[I]n a 'mixed-motive' case a plaintiff claims that an employment decision was based on both legitimate and illegitimate reasons." *Id.*

The Court of Appeals for the Third Circuit has affirmed that "a plaintiff who produces 'direct evidence' of discrimination may proceed under the mixed-motive framework of *Price Waterhouse*." *Id.* at 787 n.5 (cleaned up). Ultimately, "[w]hether a case is a pretext case or a mixed-motives case is a question for the court once all the evidence has been received." *Id.* at 788 (quoting *Radabaugh v. Zip Feed Mills, Inc.*, 997 F.2d 444, 448 (8th Cir. 1993)).

After all evidence was received at trial, the Court concluded that Mr. Labrice could proceed under the mixed-motive framework because he produced direct evidence of discrimination. Mr. Labrice offered evidence that Defendants issued him a rejection form in which Defendants explicitly stated: "The reasons for your rejection from the above positions are as follows: . . . . You were in [injured on duty] status from 8/7/18-4/14/19." This is direct evidence of discrimination, and therefore the Court ruled that Mr. Labrice was entitled to a mixed-motive instruction.

Additionally, Defendants acknowledge that, unlike Counts 1 and 4, "Count 2 can only be charged under the pretext/determinative factor instruction." Defs.' Trial Brief on Damages, ECF No. 141, at 9 n.1; *see also* Third Circuit Model Instructions § 9.1.7, at 47-49 (June 2024 ed.). Thus, the Court properly charged Count 2 under the pretext instruction notwithstanding the decision to charge Counts 1 and 4 under mixed-motive instructions.

The Court sees no reason why these decisions should justify using its discretion to decline to award equitable remedies to Mr. Labrice.

### ii. <u>Verdict Sheet Interrogatories</u>

Defendants also object to the award of any remedies based on the Court's failure to include on the verdict sheet special interrogatories on the elements of Count 2.

Defendants object that, on Count 2, the verdict sheet asked whether Defendants "retaliated," rather than asking whether "retaliation was *the determinative factor* . . . ." Defs.' Trial Brief on Damages, ECF No. 141, at 10 (emphasis in original). However, Defendants also acknowledge that many courts "disfavor the inclusion of questions on elements of the *McDonnell Douglas* framework on verdict sheets." *Id.* (citing *Erhart v. City of Atl. City*, No. CV 00-6209 (JHR), 2005 WL 8174791, at *12 (D.N.J. Feb. 10, 2005)). Ultimately, "[t]he district court has discretion in determining whether to submit special interrogatories to the jury regarding the elements of an offense." *United States v. Console*, 13 F.3d 641, 663 (3d Cir. 1993). Here, the Court charged the jury on the elements of the claims and determined that it was unnecessary to submit special interrogatories to the jury on those elements.[12] This decision does not justify using the Court's equitable discretion to decline to award remedies to Mr. Labrice.

### iii. <u>Supplemental Pretext Instruction</u>

Defendants also object to the award of any remedies based on the Court's failure to include a specific instruction found in other inapplicable model pretext-theory jury instructions.[13]

Defendants argue that an additional instruction "found in other pretext jury instructions" was omitted in the Court's instruction on Count 2 and this omission somehow prejudiced

---

[12] Moreover, the jury submitted a question during their deliberations asking to view a written copy of the jury instructions. *See* Jury Questions, ECF No. 125, at 1. With the parties' consent, the Court provided the jury with a copy of the instructions. This further undermines Defendants' argument that any confusion was caused by the Court's decision to not include special interrogatories on the elements of Count 2.

[13] *See* Defs.' Trial Brief on Damages, ECF No. 141, at 9-10 (citing Third Circuit Model Instructions § 9.1.2 (June 2024 ed.)).

7

Defendants. *Id.* However, Defendants had the opportunity to make objections to the Court's proposed instructions and failed to object on this basis. The Court determined that the instruction on Count 2 was sufficient, consistent with the Court of Appeals for the Third Circuit's model instruction for ADA retaliation. *See* Third Circuit Model Instructions § 9.1.7 (June 2024 ed.). Thus, the absence of this specific instruction does not justify using the Court's equitable discretion to decline to award remedies to Mr. Labrice.

### iv. **Allegedly Inconsistent Jury Findings**

Finally, Defendants object to the award of any remedies based on allegedly inconsistent findings from the jury. Defendants' position is that the jury's findings on FMLA retaliation and ADA disability discrimination are inconsistent with the jury's verdict on ADA retaliation. The Court disagrees.

First, FMLA retaliation and ADA retaliation are distinct claims, that arise under distinct laws, and contain distinct elements. A reasonable jury could find for the plaintiff on one claim without finding for him on the other—just as the jury did here. Thus, the jury's findings are not inconsistent and do not justify the Court using its discretion to decline to award equitable remedies.

Moreover, there is no inconsistency between the jury finding for Mr. Labrice on his ADA retaliation claims ("Count 2") while also finding that Defendants proved the same-decision defense on Mr. Labrice's ADA disability discrimination claims ("Count 1"). On Count 1, the jury found that each Defendant proved they would have made the same decision even if Mr. Labrice's disability had played no role in the employment decision. This does not contradict the jury's finding in favor of Mr. Labrice on Count 2, as the claims are distinct. ADA disability discrimination concerns animus towards Mr. Labrice's disability whereas ADA retaliation concerns retaliation for Mr. Labrice's utilization of medical leave. Again, the jury's findings are

8

not inconsistent and do not justify the Court using its discretion to decline to award equitable remedies.

### b. **Back Pay**

The Court now considers what equitable remedies Mr. Labrice is entitled to, starting with back pay.

"Back pay is designed to make victims of unlawful discrimination whole by restoring them to the position they would have been in absent the discrimination." *Donlin v. Philips Lighting N. Am. Corp.*, 581 F.3d 73, 84 (3d Cir. 2009). "The appropriate standard for the measurement of a back pay award is to take the difference between the actual wages earned and the wages the individual would have earned in the position that, but for discrimination, the individual would have attained." *Gunby v. Pennsylvania Elec. Co.*, 840 F.2d 1108, 1119 (3d Cir. 1988). "The relevant time period for calculating an award of back pay begins with [the] wrongful [employment action] and ends at the time of trial." *Blum v. Witco Chemical Corp.*, 829 F.2d 367, 373 (3d Cir. 1987); *see also Thorne v. City of El Segundo*, 802 F.2d 1131, 1136 (9th Cir. 1986) (collecting circuit court cases affirming that back pay is calculated from the date of the discriminatory act until the date of final judgment).

"Back pay is not an automatic or mandatory remedy, but 'one which the courts "may" invoke' at their equitable discretion." *Donlin*, 581 F.3d at 84 (quoting *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 415 (1975)). However, courts "must exercise this power 'in light of the large objectives of the Act.'" *Albemarle Paper Co.*, 422 U.S. at 416. Therefore, "given a finding of unlawful discrimination, [14] backpay should be denied only for reasons which, if applied

---

[14] Retaliation under the ADA is a form of unlawful discrimination. As the Court of Appeals for the Third Circuit explained: "The ADA provides: No person shall discriminate against any individual because such individual has

generally, would not frustrate the central statutory purposes of eradicating discrimination throughout the economy and making persons whole for injuries suffered through past discrimination." *Id.* at 421.

Here, Mr. Labrice is entitled to back pay for the period from his unlawful demotion on May 14, 2019, to the entry of the jury's verdict on April 15, 2025. Taking the difference between the actual wages Mr. Labrice earned as a lieutenant during this period and the wages Mr. Labrice would have earned as a captain, the Court finds that Mr. Labrice is entitled to $129,935.84 in back pay.[15]

Mr. Labrice argues that the Court should also grant him, as part of his back pay award, 1,300 hours of "compensatory time." Compensatory time is time given to captains who work outside of their scheduled hours. This time is accrued, and employees can subsequently use this time for leave, similar to paid time off.

The Court finds that an award of compensatory time is not necessary to make Mr. Labrice whole in this case. Lieutenants in the Philadelphia Police Department are compensated for hours worked beyond their normal schedule through overtime pay. *See* Defs.' Response Brief, ECF No. 151, at 4. And overtime pay is paid at a rate of 1.5 times an employee's regular pay. *See id.*

---

opposed any act or practice made unlawful by [the ADA] or because such individual made a charge ... under [the ADA]. 42 U.S.C. § 12203(a) (2002). Thus, it is unlawful for an employer to retaliate against an employee based upon the employee's opposition to anything that is unlawful under the ADA." *Shellenberger v. Summit Bancorp, Inc.*, 318 F.3d 183, 188 (3d Cir. 2003) (alterations in original).

[15] This calculation reflects the parties' stipulation that "[t]he current difference in earnings between what [Mr. Labrice] has earned and what he would have earned if he retained the rank of Captain is $643.07 per week," and "[a]s of April 7, 2025, [Mr. Labrice's] potential back pay is $129,164.77." Joint Stipulation, ECF No. 140-1, ¶¶ 1-4. Thus, as of the date of the jury's verdict the following week on April 15, 2025, Mr. Labrice is entitled to $129,935.84 in back pay. At the Court's May 13, 2025, hearing, Plaintiff's counsel stated on the record that the parties discussed this calculation and Mr. Labrice is comfortable with the Court awarding $129,935.84 in back pay based on the joint stipulation. In his brief, Mr. Labrice further asks that the Court award prejudgment interest on his award of back pay. However, in light of the parties' stipulation on the back pay amount, the Court declines to increase the award.

10

Because a captain's salary is less than 1.5 times the salary of a lieutenants, Mr. Labrice was not made worse off by earning overtime pay (rather than accruing compensatory time) for the extra hours he worked during the period between his unlawful demotion and the jury's verdict. Thus, the Court will not award compensatory time as part of the back pay award.[16]

### c. <u>Reinstatement</u>

"[B]ack pay makes a plaintiff whole from the time of discrimination until trial," but "a plaintiff's injury may continue thereafter." *Donlin v. Philips Lighting N. Am. Corp.*, 581 F.3d 73, 86 (3d Cir. 2009). Therefore, courts fashioning equitable remedies must also consider future lost earnings to ensure that victims of unlawful discrimination are made whole. *See id.*

"Reinstatement is the preferred remedy to avoid future lost earnings," as "[i]t is an obvious form of relief to make the plaintiff whole and to relieve the plaintiff of the effects of discrimination." *Ellis v. Ringgold School Dist.*, 832 F.2d 27, 30 (3d Cir. 1987). However, courts "may deny reinstatement to a plaintiff when, for example, animosity between the parties makes such a remedy impracticable." *Id.* In such instances, the "alternative" remedy of front pay may be appropriate. *Donlin*, 581 F.3d at 86.[17]

Here, Defendants have not demonstrated to the Court why reinstatement would be impracticable. Mr. Labrice has continued to work as a lieutenant for Defendant City of Philadelphia throughout the course of this litigation. Thus, the mere fact that Mr. Labrice filed

---

[16] Mr. Labrice also requests that the Court order, as part of the back pay award, that Defendants contribute to Mr. Labrice's pension the amount that Defendants would have contributed based on Mr. Labrice's higher captain's salary. However, I accept Defendants explanation that any award of back pay and/or front pay will automatically be reflected in Mr. Labrice's pension as though he had worked as a captain during the relevant time. *See* Defs.' Response Brief, ECF No. 151, at 5-6. Thus, the Court will not order such relief.

[17] At the Court's May 13, 2025, hearing on remedies, Mr. Labrice expressed that he would prefer reinstatement—including reinstatement to a probationary period—over an award of front pay.

suit against his employer is not enough to render reinstatement infeasible. *Contra Smith v. Presidio Networked Solutions, Inc.*, No. 22-736, 2024 WL 4094273, at *5 (E.D. Pa. Sept. 5, 2024) (recognizing that reinstatement is often infeasible when an employee has been terminated and subsequently filed suit against their employer).

The testimony offered at trial indicates that there may be animosity between Mr. Labrice and his then-supervisor Inspector Francis Bachmayer, but Mr. Labrice has no contact with Inspector Bachmayer in his current position with the Department. Thus, any antagonism that may have existed when Mr. Labrice worked directly under Inspector Bachmayer is no longer a sufficient reason to deny reinstatement. *See Washington v. Davis*, No. CIV.A. 01–1863, 2002 WL 1798764, at *2 (E.D. La. Aug. 5, 2002) ("[W]hen one of the antagonists is no longer involved in the situation, the antagonism that existed is no longer a sufficient reason to deny reinstatement.").

Based on the record, reinstatement is feasible and some kind of reinstatement is warranted to avoid future lost earnings. Nevertheless, the Court finds that reinstating Mr. Labrice to the permanent rank of captain would be inappropriate.

Like Title VII, the ADA's equitable remedies are "intended to make the victims of unlawful discrimination whole" such that "persons aggrieved by the consequences and effects of the unlawful employment practice [will] be, so far as possible, restored to a position where they would have been were it not for the unlawful discrimination." *Albemarle Paper Co.*, 422 U.S. at 421 (quoting 118 Cong. Rec. 7168 (1972)). Courts may, however, decline to award such remedies where the award "would not merely restore [the employee] to the position where they would have been were it not for the unlawful discrimination," but instead "would catapult them into a better position than they would have enjoyed in the absence of discrimination." *Ford Motor Co. v.*

12

*EEOC*, 458 U.S. 219, 234 (1982) (internal quotation marks omitted).[18]  Accordingly, the Court considers whether reinstating Mr. Labrice to the permanent rank of captain would effectively "catapult [him] into a better position than [he] would have enjoyed in the absence of discrimination." *Ford Motor Co.*, 458 U.S. at 234.

To make this determination, the Court must analyze what position Mr. Labrice would have enjoyed in the absence of Defendants' discrimination.  When Defendants demoted him, Mr. Labrice was working as a probationary captain.  He had not yet completed his six-month probation period and attained the permanent rank of captain.  Mr. Labrice argues that—but for Defendants' unlawful retaliation—Mr. Labrice would have successfully completed his probation and become a permanent captain.[19]  But this claim is speculative.

The jury's findings of fact concern the period between when Mr. Labrice took medical leave in August 2018 and when Defendant Ross formally approved the decision to demote Mr. Labrice in April 2019, while Mr. Labrice was out on medical leave.  During this period, the jury determined that Mr. Labrice's use of medical leave had a determinative effect on Defendants' decision.[20]

The Court cannot make any finding about what would have happened after Mr. Labrice returned from leave if the unlawful discrimination had not occurred.  It would be overly speculative to assume that—after returning from leave—Mr. Labrice would have successfully completed his

---

[18] *See, e.g., McKenna v. City of Philadelphia*, 636 F. Supp. 2d 446, 466 (E.D. Pa. 2009) (declining to award front pay where Plaintiff's disability prevented him from working so an award of front pay would put him in a better position than he would have enjoyed had he not been discriminated against); *Sowell v. RAV Investigative & Security Services, Ltd*, No. 15-03657, 2016 WL 3014881, at *5 (E.D. Pa. May 26, 2016) (declining to award front pay where Plaintiff was incarcerated so an award of front pay would put him in a better position than he would have enjoyed had he not been discriminated against).
[19] Plaintiff's counsel articulated this position at the Court's May 13, 2025, hearing on remedies.
[20] *See* Final Jury Instructions, ECF No. 121, at 12.

probation, just as it would be overly speculative to assume that—after Mr. Labrice returned from leave—circumstances would have arisen that would have entitled Defendants to lawfully demote Mr. Labrice. *Cf. Washington v. Davis*, No. CIV.A. 01–1863, 2002 WL 1798764, *4 (E.D. La. Aug. 5, 2002) (holding that an illegally terminated probationary employee was entitled to front pay for only the remainder of her probationary period because it would be "overly speculative" to "assume that the plaintiff's employment would continue beyond her probationary period," just as it would be "unreasonably speculative" to assume that just cause would have arisen to justify her termination during the remainder of her probationary period).

Thus, the Court will not assume that Mr. Labrice would have enjoyed the permanent rank of captain in the absence of Defendants' discrimination. Rather, if Defendants' unlawful demotion had not occurred, Mr. Labrice would have would have returned to work as a probationary captain with the opportunity to prove himself and potentially complete his probationary period. As a result of Defendants' retaliatory action, Mr. Labrice lost this opportunity. Thus, to "restore [Mr. Labrice] to the position where [he] would have been were it not for the unlawful discrimination,"[21] the Court will restore Mr. Labrice back to his probationary status as captain. To skip ahead and reinstate Mr. Labrice to the permanent rank of captain would be to "catapult [him] into a better position than [he] would have enjoyed in the absence of discrimination."[22]

Therefore, the Court finds that Mr. Labrice is entitled to a new six-month probationary period as a captain in the Philadelphia Police Department.[23] *Cf. Carrero v. New York City Housing Authority*, 890 F.2d 569, 579 (2d Cir. 1989) (upholding a district court's order that that a successful

---

[21] *Ford Motor Co.*, 458 U.S. at 234 (internal quotation marks omitted).
[22] *Id.*
[23] The Court will assume that—in reinstating Mr. Labrice—Defendants will make every effort to avoid conflict by placing Mr. Labrice in a position where he would work closely with Inspector Bachmayer or any other individual who would be unable to fairly evaluate Mr. Labrice due to animosity created by this litigation.

employment discrimination claimant be reinstated to her probationary position and be entitled to a new probationary period). This new probationary period will "restore the parties to the *status quo ante* by giving [Mr. Labrice] another chance to prove h[im]self without the handicap of any impermissible . . . discrimination." *Id.* At the same time, restarting Mr. Labrice's six-month probationary period will ensure that Defendants have adequate time to evaluate Mr. Labrice's performance fairly and without prejudice. This will mitigate Defendants' concerns that reinstatement might effectively force the Police Department to rush its probationary evaluation and/or compel the Department to promote an unfit employee.

### d. Permission to Take Promotional Examination

In conjunction with his request for reinstatement, Mr. Labrice also requests the equitable remedy of an Order granting him permission to take the Inspector's Examination, a promotional exam that Mr. Labrice argues he would have been eligible to take if Defendants had not illegally demoted him. However, to be eligible for the Inspector's Examination, applicants must have at least "one year of experience as a Police Captain." Defs.' Response Brief, Ex. B, ECF No. 151-2, at 2.

The evidence does not demonstrate that, in the absence of Defendants' discrimination, Mr. Labrice would have become a permanent captain and attained the requisite experience to be eligible for the Inspector's Examination. As discussed *supra*, it would be overly speculative to assume that—after returning from leave—Mr. Labrice would have successfully completed his six-month probation. Thus, it would be overly speculative to assume that, absent Defendants' discrimination, Mr. Labrice would have attained at least one year of experience as a captain. Therefore, an Order granting Mr. Labrice permission to take the Inspector's Examination would

15

effectively "catapult [him] into a better position than [he] would have enjoyed in the absence of discrimination," and such relief is inappropriate. *Ford Motor Co. v. EEOC*, 458 U.S. 219, 234 (1982).

### III.    Conclusion

For the foregoing reasons, the Court will award to Mr. Labrice the following remedies: attorneys' fees and costs,[24] $1.00 in nominal damages, $129,935.84 in back pay, and reinstatement to the probationary position of captain so that Mr. Labrice may start a new six-month probationary period.

 s/ANITA B. BRODY, J.<br>
ANITA B. BRODY, J.<br>
May 27, 2025

---

[24] The Court will subsequently determine the appropriate attorneys' fees and costs, as discussed *supra* note 10.