**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| MICHAEL LABRICE, | : | |
| Plaintiff, | : | |
| | : | CIVIL ACTION |
| v. | : | 19-4377 |
| | : | |
| CITY OF PHILADELPHIA et al., | : | |
| | : | |
| Defendants. | : | |

**M**EMORANDUM

Table of Contents

I.    Introduction ................................................................................................ 2

II.   Defendants' Motion ..................................................................................... 2

  A.  Defendants' entitlement to judgment as a matter of law ............................. 3

  B.  Defendants' entitlement to a new trial ...................................................... 5

    i.   Whether the jury's verdict goes against the weight of the evidence ............. 6

    ii.  Whether prejudicial errors of law justify a new trial .............................. 6

       1. Mixed Motive Instructions.................................................................7

       2. Scott Drissel...................................................................................8

         a. Labrice's Motion to Preclude Defendants from Calling Drissel...........8

         b. Defendants' Request to Use Drissel as a Rebuttal Witnes...............14

       3. Voir Dire......................................................................................27

    iii. Whether the Court's activity at sidebar justifies a new trial ................... 19

    iv.  Whether the statement by plaintiff's counsel justifies a new trial ............ 22

    v.   Whether the jury's verdict is inconsistent .......................................... 24

       1. Counts 2 and 4...............................................................................25

       2. Counts 1 and 2...............................................................................25

       3. Counts 1 and 4...............................................................................25

       4. Counts 2 and 3...............................................................................26

III.  Labrice's Motion ........................................................................................ 27

  A. Whether the judgment must be amended under Rule 59(e) .......................... 27

  B.  Whether Labrice is entitled to a new trial ................................................ 31

IV.   Conclusion ................................................................................................. 32

I.    **Introduction**[1]

This is an employment discrimination action brought by Plaintiff, Michael Labrice, against the City of Philadelphia, Philadelphia Police Department Chief Inspector Christopher Flacco, and former Philadelphia Police Commissioner Richard Ross (collectively, "Defendants") under the Americans with Disabilities Act ("ADA"), Pennsylvania Human Relations Act ("PHRA"), and Family and Medical Leave Act ("FMLA").  In April 2025, the Court held a six-day jury trial on Labrice's claims of disability discrimination under the ADA and PHRA ("Count 1"); retaliation for taking medical leave under the ADA and PHRA ("Count 2"); interference under FMLA ("Count 3"); and retaliation for exercising the right to take leave under the FMLA ("Count 4").

The jury granted liability in favor of Labrice on Counts 1 and 2 and denied liability on Counts 3 and 4.  The Court determined the appropriate remedies for the successful claims.  *See* Remedies Opinion, ECF No. 159.

The Court now considers post-trial motions filed by Defendants and Labrice.  *See* Defendants' Post-Trial Motion, ECF No. 157; Labrice's Post-Trial Motion, ECF No. 156.  For the reasons that follow, the Court will deny both motions.

II.    **Defendants' Motion**

Defendants move for judgment as a matter of law under Federal Rule of Civil Procedure 50, or alternatively, a new trial under Federal Rule of Civil Procedure 59.  *See* Defendants' Motion, ECF No. 157.

---

[1] For purposes of this Opinion and Order, the Court assumes some familiarity with the history and posture of the case. For a summary of the facts and history of the case, see the Court's May 27, 2025, opinion on remedies, ECF No. 159, at 1-3.

A.  <u>**Defendants' entitlement to judgment as a matter of law**</u>

"Judgment as a matter of law is proper only if the record is 'critically deficient of the minimum quantum of evidence' needed to support the verdict." *Washington v. Gilmore*, 124 F.4th 178, 185 (3d Cir. 2024) (quoting *Gomez v. Allegheny Health Servs., Inc.*, 71 F.3d 1079, 1083 (3d Cir. 1995)).  In other words, "a motion for judgment of a matter of law . . . . should be granted only if, viewing the evidence in the light most favorable to the nonmovant and giving it the advantage of every fair and reasonable inference, there is insufficient evidence from which a jury reasonably could find liability." *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1166 (3d Cir. 1993).  In assessing Defendants' motion, "the court draws all reasonable and logical inferences in the nonmovant's favor." *Id.*

Defendants argue they are entitled to judgment as a matter of law under Federal Rule of Civil Procedure 50 because Labrice presented insufficient evidence from which the jury could reasonably find liability on Count 1 (disability discrimination under the ADA and PHRA) and Count 2 (retaliation for using medical leave under the ADA and PHRA).  Concerning Count 1, Defendants argue that "no reasonable jury could conclude that Labrice's disability motivated the decision to reject him during his probationary period."  Defendants' Motion, ECF No. 157, at 17. Concerning Count 2, Defendants argue that they established a legitimate nondiscriminatory reason for demoting Labrice—Labrice's poor work performance—and Labrice has "offered no cognizant explanation to even suggest, much less prove, that [Defendants'] proffered legitimate nondiscriminatory reason is pretextual." *Id.* at 19.

Although Defendants may not agree with the jury's determinations, the record is not "'critically deficient of the minimum quantum of evidence' needed to support the verdict." *Washington v. Gilmore*, 124 F.4th 178, 185 (3d Cir. 2024).  To the contrary: the Court finds that

the record contains more than enough evidence to support the jury finding liability on Counts 1

and 2.  This evidence includes:

(i)    **Bachmayer's conflicting trial testimony and first performance evaluation of Labrice:**  At trial, Inspector Francis Bachmayer testified that he had concerns about Labrice from the very start of Labrice's assignment under Bachmayer's supervision.  *See* Transcript Day 3, ECF No. 143, at 158:17-160:01; 246:19-247:10.  However, two months after Labrice started his assignment but before he got injured and went on leave, Bachmayer submitted a performance evaluation that graded Labrice as satisfactory in all ten available categories.  *See id.* at 84:08-15.  The incongruence between Bachmayer's testimony at trial and his pre-injury evaluation of Labrice could reasonably cause the jury to disbelieve Bachmayer's testimony and disbelieve Defendants' claim that Labrice's deficient work performance was the reason for his demotion.

(ii)    **The contents and timing of Labrice's second performance evaluation:**  After Labrice became disabled and went on medical leave, Bachmayer completed a second performance evaluation of Labrice, titled a five-month evaluation.  In this evaluation, Bachmayer graded Labrice as unsatisfactory in nine out of ten available categories.  *See id.* at 97:19-23.  The stark change between the two performance evaluations—one issued before Labrice became disabled and one issued after the onset of Labrice's disability and while Labrice was on medical leave—could reasonably lead the jury to conclude that Defendants' proffered reason for demoting Labrice was suspect and Labrice's demotion was in fact due to his disability and/or his use of leave.  Additionally, the timing of this second performance evaluation—which was completed while Labrice was out on medical leave and before Labrice had worked five months as a probationary captain—could reasonably lead the jury to conclude that Defendants' proffered reason for demoting Labrice was suspect and Labrice's demotion was in fact due to his disability and/or his use of leave.  *See id.* at 96:10-19.

(iii)    **The timing of Labrice's demotion:**  Defendants formally recommended and approved Labrice's demotion while Labrice's probationary period was frozen during his medical leave.  *See id.* at 62:25-63:02; Transcript Day 4, ECF No. 144, at 129:07-19; Transcript Day 5, ECF No. 145, at 7:22-812.  The timing of this employment decision could reasonably lead the jury to believe that Defendants demoted Labrice because of his disability and/or his use of leave.

(iv)    **Labrice's rejection form:**  Defendants notified Labrice of his demotion by issuing him a rejection form that stated: "The reasons for your rejection from the above positions are as follows: . . . . You were in [injured on duty] status from 8/7/18-4/14/19."  Labrice's Trial Exhibit 28.  Defendants' explicit reference to Labrice's injured status as one of "[t]he reasons for [Labrice's] rejection" could reasonably lead the jury to believe that Defendants demoted

4

Labrice because of his injury (i.e., his disability) and/or his use of leave.

(v) **Labrice's demotion packet:** The packet that Bachmayer submitted to request Labrice's demotion included numerous documents concerning Labrice's injury, his injured-on-duty status, and his medical leave. *See* Defendants' Trial Exhibit 26. The inclusion of these documents could indicate to a reasonable jury that Defendants demoted Labrice because of his disability and/or use of leave, especially given Bachmayer's testimony during trial that the entirety of the packet was the basis for his decision to recommend Labrice's demotion. *See* Transcript Day 3, ECF No. 143, at 63:12-64:20.

Because the record contains sufficient evidence from which a reasonable jury could find a legally sufficient basis to rule for Labrice on Counts 1 and 2, the Court will deny Defendants' motion for judgment as a matter of law.

**B. Defendants' entitlement to a new trial**

Defendants move in the alternative for a new trial under Federal Rule of Civil Procedure 59. After a jury trial, the Court may grant a new trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court." FED. R. CIV. P. 59(a)(1)(A). The decision to grant a new trial is committed to the district court's discretion. *See Allied Chemical Corp. v. Daiflon, Inc.*, 449 U.S. 33, 36 (1980).

The Court's level of discretion differs depending on the reasons for granting the new trial. *See Klein v. Hollings*, 992 F.2d 1285, 1289 (3d Cir. 1993). When the motion for a new trial is based on a claim that the verdict goes against the weight of the evidence, the court's discretion is limited. *Id.* "A new trial should be granted only where the 'great weight' of the evidence cuts against the verdict and 'where a miscarriage of justice would result if the verdict were to stand.'" *Springer v. Henry*, 435 F.3d 268, 274 (3d Cir. 2006) (quoting *Sheridan v. E.I. DuPont de Nemours & Co.*, 100 F.3d 1061, 1076 (3d Cir. 1996) (en banc)).

By contrast, "the district court's latitude on a new trial motion is broad when the reason for interfering with the jury verdict is a ruling on a matter that initially rested within the discretion of the court . . . ." *Klein*, 992 F.2d at 1289-90. Evidentiary rulings, prejudicial statements made by counsel, and the content of jury instructions are three such discretionary matters. *See id.* at 1290 (evidentiary rulings and prejudicial statements made by counsel); *Jacobson ex rel. Jacobson v. BMW of North America, LLC*, 376 Fed. Appx. 261, 264 (3d Cir. 2010) (jury instructions). "A motion for a new trial on the basis of alleged trial error requires two inquiries: whether an error was in fact made; and whether that error was so prejudicial that refusal to grant a new trial would be 'inconsistent with substantial justice.'" *Bhaya v. Westinghouse Elec. Corp.*, 709 F. Supp. 600, 601 (E.D. Pa. 1989) (quoting FED. R. CIV. P. 61).

Defendants argue they are entitled to a new trial for five reasons: (i) the verdict goes against the weight of the evidence; (ii) prejudicial errors of law justify a new trial; (iii) the Court's activity at sidebar tainted the verdict; (iv) an improper statement by plaintiff's counsel tainted the verdict; and (v) the jury's verdict is irreconcilably inconsistent.

### i.  Whether the jury's verdict goes against the weight of the evidence

Defendants first contend they are entitled to a new trial because the jury's verdict goes against the weight of the evidence. The Court disagrees. As discussed *supra*, Labrice produced sufficient evidence to support liability on Counts 1 and 2. No miscarriage of justice would result from allowing the jury's verdict to stand. Therefore, the Court will deny a new trial on this basis. *See Williamson v. Consolidated Rail Corp.*, 926 F.2d 1344, 1352 (3d Cir. 1991) ("[T]he district court ought to grant a new trial on the basis that the verdict was against the weight of the evidence only where a miscarriage of justice would result if the verdict were to stand.").

### ii.  Whether prejudicial errors of law justify a new trial

Defendants also contend that three prejudicial errors of law justify a new trial: (1) the Court's decision to use mixed-motive jury instructions, (2) the Court's decision to preclude Defendants from calling Captain Scott Drissel as a witness, and (3) the Court's refusal to permit Defendants to ask certain follow-up questions during *voir dire*.  The Court disagrees.

### 1.  <u>Mixed Motive Instructions</u>

As the Court held in its May 27, 2025, opinion on remedies,[2] the use of mixed-motive instructions on Count 1 (disability discrimination under the ADA and the PHRA) and Count 4 (FMLA retaliation) was proper based on the evidence presented at trial.

"[A] plaintiff who produces 'direct evidence' of discrimination may proceed under the mixed-motive framework . . . ."  *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 n.5 (3d Cir. 2016).  "[D]irect evidence must satisfy two requirements.  First, the evidence must be strong enough 'to permit the factfinder to infer that a discriminatory attitude was more likely than not a motivating factor in the [defendant's] decision.'  Second, the evidence must be connected to the decision being challenged by the plaintiff."  *Anderson v. Wachovia Mortg. Corp.*, 621 F.3d 261, 269 (3d Cir. 2010) (internal citations omitted).

The rejection form that Defendants provided to Labrice constitutes direct evidence of discrimination.  In the form, Defendants explicitly listed Labrice's injured-on-duty status as one of "[t]he reasons for [his] rejection" from probation.  Labrice's Trial Exhibit 28.  This statement is strong enough to permit the jury to infer that a discriminatory attitude regarding Labrice's injury and/or use of leave was more likely than not a motivating factor in Defendants' decision to demote Labrice.  And the form was plainly connected to the decision to demote Labrice—it was the vehicle that Defendants used to notify Labrice of his demotion and was signed by the individual defendants

---

[2] *See* Remedies Opinion, ECF No. 159, at 5-6.

in this lawsuit, then-Commissioner Richard Ross and Chief Inspector Christopher Flacco.  Thus, no prejudicial error occurred by the use of the mixed motive instructions.

## 2.  <u>Scott Drissel</u>

Defendants next argue that the Court abused its discretion by (a) granting Labrice's motion to preclude Defendants from calling Captain Scott Drissel as a witness based on Drissel's addition to Defendants' witness list six days before trial,[3] and (b) subsequently precluding Defendants from calling Drissel as a rebuttal witness.  Both of the Court's rulings were proper.

### a.  <u>Labrice's Motion to Preclude Defendants from Calling Drissel</u>

The Court properly granted Labrice's motion to preclude Defendants from calling Drissel as a witness.  As the late Judge Gene Pratter explained:

> [T]he Federal Rules of Civil Procedure and principles of responsible case management abhor last-minute surprises and unnecessary do-overs.  The discovery rules and the Court's published policies and procedures are designed to ensure that civil litigants have all the information they need by an agreed upon point in the life of a case so that they may prepare their arguments and evidence for trial in a smooth and cost-effective manner.  So great is this commitment to transparency and cooperation that, where a party fails to identify a witness until the eve of trial without justification, the Rules preclude that party from using that witness.

*Pac-West Distributing NV LLC v. AFAB Industrial Services, Inc.*, No. 19-3584, 2023 WL 3952347, at *1 (E.D. Pa. June 12, 2023).  Such is the case here, where Defendants failed to identify its witness, Scott Drissel, until right before trial and without justification, and the Court properly precluded Defendants from calling Drissel as a witness.

Under Federal Rule of Civil Procedure 26(a)(1)(A), parties "must" disclose, among other things, "the name and, if known, the address and telephone number of each individual likely to have discoverable information . . . ."  FED. R. CIV. P. 26(a)(1)(A)(i).  Parties have an ongoing duty

---

[3] *See* Labrice's Motion to Preclude Defendants from Calling Drissel as a Witness, ECF No. 103.

to keep their Rule 26 disclosures current.  *See Nicholas v. Pennsylvania State University*, 227 F.3d 133, 148 (3d Cir. 2000).  Under Federal Rule of Civil Procedure 26(e), a party "must supplement or correct its disclosure . . . in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing."  FED. R. CIV. P. 26(e)(1)(A).  These "Rule 26 disclosures are meant to provide the opposing party with information as to the identification and location of persons with knowledge so that they can be contacted in connection with the litigation for being interviewed, for being deposed, or for providing background information."  *Eli Lilly and Co. v. Actavis Elizabeth LLC*, Civil Action No. 07–3770 (DMC), 2010 WL 1849913, at *3 (D.N.J. May 7, 2010) (internal citations and quotations marks omitted).

"A majority of courts, the leading treatises, and the Advisory Committee Note to Rule 26 agree that an individual's existence or knowledge can otherwise be made known, and thus be sufficiently disclosed for Rule 26 purposes, through deposition testimony or other discovery."  *Pac-West Distributing NV LLC*, 2023 WL 3952347, at *2 (internal quotation marks omitted).  "But to obviate the need for formal disclosure, this information must be 'clear and unambiguous,' and not merely the 'mention of an individual's identity.'"  *Id.* (quoting *Eli Lilly and Co.*, 2010 WL 1849913, at *4).  "'[R]eference to a witness in discovery documents, interrogatories, or depositions or even knowledge that someone has relevant information is insufficient to provide notice that the person might be called as a witness by the opposing party.'  Rather, for a witness to 'otherwise be made known,' it must be quite clear to the other side that the witness exists, has relevant knowledge, and may be called at trial."  *Id.* (quoting *Syngenta Crop Prot., LLC v. Willowood, LLC*, No. 15-cv-274, 2017 WL 3309699, at *3 (M.D.N.C. Aug. 2, 2017)).

When a party is required to supplement its disclosures but fails to do so, Rule 37 is triggered. "[U]nder Federal Rule of Civil Procedure 37(c)(1), when 'a party without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1) [that party] shall not, unless such failure is harmless, be permitted to use as evidence at trial . . . any witness or information not so disclosed.'" *Nicholas v. Pennsylvania State University*, 227 F.3d 133, 148 (3d Cir. 2000) (alterations in original). "In considering whether the exclusion of evidence is an appropriate sanction for failure to comply with discovery duties, [courts] must consider four factors: (1) the prejudice or surprise of the party against whom the excluded evidence would have been admitted; (2) the ability of the party to cure that prejudice; (3) the extent to which allowing the evidence would disrupt the orderly and efficient trial of the case or other cases in the court; and (4) bad faith or [willfulness] in failing to comply with a court order or discovery obligation." *Id.*

Here, Defendants failed to disclose Drissel under Rule 26, and the Court properly excluded Defendants' use of Drissel under Rule 37.

Defendants failed to sufficiently disclose Drissel or identify him as a potential witness until six days before the start of trial, despite having ample time to do so. Labrice initiated this lawsuit in September 2019. In February 2020, Defendants provided their initial disclosures under Rule 26 which failed to specifically name Drissel as a person likely to have discoverable information. *See* Ex. A, Defendants' Motion, ECF No. 157-1, at 2.[4]

---

[4] Defendants' initial disclosures contained a statement that "persons likely to have discoverable information" include "[a]ny individuals and medical providers identified in the documents produced simultaneously with these Disclosures." *Id.* This broad statement failed sufficiently satisfy Rule 26's requirement that parties "must" provide "the name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses." FED. R. CIV. P. 26(a)(1)(A)(i). Afterall, mere "[r]eference to a witness in discovery documents . . . is insufficient to provide notice that the person might be called as a witness by the opposing party." *Pac-West Distributing NV LLC v. AFAB Industrial Services, Inc.*, No. 19-3584, 2023 WL 3952347, at *2 (E.D. Pa. June 12, 2023).

After the parties engaged in extensive discovery and summary judgment briefing, the Court scheduled trial to begin in June 2024. On April 29, 2024, Defendants filed a pre-trial memorandum containing their witness list. *See* Defendants' Trial Brief, ECF No. 75, at 5. This list included nine witnesses but failed to identify Drissel as a potential witness. *See id.* Trial was rescheduled multiple times, and each time the Court set new deadlines for amended pre-trial memoranda. Defendants never amended their pre-trial memorandum by any of these deadlines.

The Court held a final pre-trial conference on December 9, 2024. Witnesses were discussed, and the parties had the opportunity to object to witnesses.[5] At this time, Defendants made no mention of any intention to call Drissel as a witness. On December 23, 2024, the parties requested that trial be continued again because of a conflict with one of Defendants' witnesses. The Court rescheduled trial to begin on April 7, 2025.

Six days before the start of trial—on April 1, 2025—Defendants filed an amended pre-trial memorandum listing Drissel as a witness for the first time. *See* Defendants' Amended Trial Brief, ECF No. 102, at 5. Defendants provided no justification for this last-minute disclosure. Moreover, Defendants prefaced their newly amended witness list with the following statement: "Defendants intend to call the following witnesses, all of which are listed as Witnesses intended to be called by Plaintiff." *Id.* This assertion was plainly erroneous; Defendants' newly-added witness, Drissel, had not been listed as a witness intended to be called.

Defendants argued that their conduct satisfied Rule 26 because Drissel had been "otherwise made known" to the parties through the discovery process. FED. R. CIV. P. 26(e)(1)(A). For support, Defendants cited references to Drissel in Labrice's Internal Affairs Unit File from the Philadelphia Police Department, Bachmayer's deposition, and Labrice's deposition. *See*

---

[5] *See* Final Pre-Trial Conference Transcript, ECF No. 170, at 26:03-04.

Defendants' Motion, ECF No. 157, at 31-32.

These references fall far below the "clear and unambiguous" standard required to "obviate the need for formal disclosure." *Pac-West Distributing NV LLC v. AFAB Industrial Services, Inc.*, No. 19-3584, 2023 WL 3952347, at *2 (E.D. Pa. June 12, 2023). The references to Drissel pertain to Bachmayer's supervision of Drissel, Bachmayer's request that Labrice work with Drissel, and Labrice's negative impression of Drissel. *See* Defendants' Motion, ECF No. 157, at 31; Bachmayer Deposition, ECF No. 157-2, at 5, 11, 18, 28, 31; Labrice Deposition, ECF No. 157-3, at 14. These brief discussions were insufficient to be "quite clear to the other side" that Drissel "may be called at trial." *Pac-West Distributing NV LLC*, 2023 WL 3952347, at *2; *see also Eli Lilly and Co. v. Actavis Elizabeth LLC*, No. 07–3770 (DMC), 2010 WL 1849913, at *4 (D.N.J. May 7, 2010) ("Alleged 'disclosures' during discovery that are not facially apparent and require the drawing of further 'inferences' are insufficient to meet the requirements of Rule 26.").

Before April 1, 2025, Defendants never stated their intention to use Drissel as a witness. Contrary to Defendants' assertion in their amended pre-trial memorandum, Labrice never listed Drissel as a witness on his witness list. *Contra Toy v. Pickens*, No. 12-cv-5379, 2013 WL 12331535, at *2 n.1 (E.D. Pa. Aug. 27, 2013) (holding that defendants cannot claim to be surprised by plaintiff's intention to call a witness when defendants themselves listed that individual as a witness). And neither party listed Drissel in their initial disclosures. *Contra Pac-West Distributing*, 2023 WL 3952347, at *2 (noting that it would have been "disingenuous" to preclude the use of witnesses when, although the defendant "did not list the witnesses at issue in its initial disclosures, the plaintiffs themselves did, along with summaries detailing the specific information the witnesses had"). Thus, Drissel had not "otherwise been made known to the other parties during the discovery process," FED. R. CIV. P. 26(e)(1)(A), and Defendants, in violation of Rule 26, failed

to properly disclose that Drissel would be called as a witness.

Because Defendants were required to disclose Drissel and failed to do so, Defendants were "not allowed to use" Drissel at trial "unless the failure was substantially justified or is harmless." FED. R. CIV. P. 37(c)(1).  As discussed *supra*, "[i]n considering whether the exclusion of evidence is an appropriate sanction for failure to comply with discovery duties, [courts] must consider four factors: (1) the prejudice or surprise of the party against whom the excluded evidence would have been admitted; (2) the ability of the party to cure that prejudice; (3) the extent to which allowing the evidence would disrupt the orderly and efficient trial of the case or other cases in the court; and (4) bad faith or [willfulness] in failing to comply with a court order or discovery obligation." *Nicholas v. Pennsylvania State University*, 227 F.3d 133, 148 (3d Cir. 2000).  Three out of four of these factors support the Court's decision to preclude Defendants' use of Drissel as a witness.

The first factor is "the prejudice or surprise" of Labrice.  *Id.*  Due to Defendants' failure to disclose Drissel until six days before the start of trial, Labrice would have faced significant surprise and prejudice if Defendants were permitted to use Drissel as a witness.  Drissel had not been deposed, and Labrice had no reason to believe that Drissel may be called as a witness at trial.  Thus, the first factor supports precluding Defendants' use of Drissel.

The second factor is "the ability of [Labrice] to cure that prejudice."  *Id.*  Curing the surprise and prejudice was infeasible here.  Six days was insufficient time before trial for Plaintiff's counsel to arrange to take Drissel's deposition.  *Contra Merisant Co. v. McNeil Nutritionals, Inc.*, 242 F.R.D. 303, 308 (E.D. Pa. 2007) (denying, without prejudice, a motion to exclude an undisclosed witness because one month was enough time to promptly depose the witness).  Thus, the second factor supports precluding Defendants' use of Drissel.

The third factor is "the extent to which allowing the evidence would disrupt the orderly

and efficient trial of the case or other cases in the court." *Nicholas*, 227 F.3d at 148.  Here, delaying the start of trial would have been disruptive to the orderly and efficient trial of the case.  Given the numerous continuances already granted in this matter, the Court was unwilling to allow Defendants' late disclosure to further disturb the trial schedule.  Thus, the third factor supports precluding Defendants' use of Drissel.

The fourth factor is "bad faith or [willfulness] in failing to comply with a court order or discovery obligation."  *Id.*  This is the only factor that does not affirmatively support precluding Defendants' use of Drissel.  Defendants' assertion that Drissel was "listed as Witnesses intended to be called by Plaintiff" was misleading, especially given Defendants' late disclosure.  This erroneous assertion may have been inadvertent, however, and there is an insufficient record to support a finding of bad faith.

Overall, the factors indicate that "the exclusion of evidence is an appropriate sanction for [Defendants'] failure to comply with discovery duties" in this instance.  *Id.*  Defendants' failure to disclose Drissel was neither justified nor harmless, and the Court properly exercised its discretion to grant Labrice's motion to preclude Defendants from calling Drissel as a witness.

In ruling on the motion, the Court reserved decision on whether Drissel would subsequently be permitted to testify as a rebuttal witness.  After the close of Labrice's case, the Court then considered and properly denied Defendants' request to use Drissel in rebuttal.

### b.  Defendants' Request to Use Drissel as a Rebuttal Witness

"The admissibility of evidence in rebuttal is committed to the discretion of the trial judge." *United States v. Chrzanowski*, 502 F.2d 573, 576 (3d Cir. 1974).  "District Courts have 'allowed parties to call witnesses in rebuttal even when they were not disclosed in a pretrial memorandum or order, as long as the witness and his testimony are within the scope of proper rebuttal.'"  *Doe*

14

*ex rel. Doe v. Lower Merion School Dist.*, 665 F.3d 524, 558 (3d Cir. 2011).

"The proper function and purpose of rebuttal testimony is to explain, repel, counteract or disprove the evidence of the adverse party." *Chrzanowski*, 502 F.2d at 576. "It is well settled that evidence which properly belongs in the case-in-chief but is first introduced in rebuttal may be rejected, so as to avoid prejudice to the defendant and to ensure the orderly presentation of proof." *Emerick v. U.S. Suzuki Motor Corp.*, 750 F.2d 19, 22 (3d Cir. 1984).

Testimony properly belongs in a party's case-in-chief and, thus, falls outside the scope of rebuttal evidence if its "purpose is to contradict an expected and anticipated portion of the plaintiff's case in chief . . . ." *Morgan v. Commercial Union Assur. Companies*, 606 F.2d 554, 556 (5th Cir. 1979). Accordingly, "it is properly within the discretion of the trial judge to limit [rebuttal] testimony to that which is precisely directed to rebutting new matter or new theories presented by the [opposing party's] case-in-chief." *Bowman v. General Motors Corp.*, 427 F. Supp. 234, 240 (E.D. Pa. 1977). Conversely, it exceeds the trial judge's discretion to "exclude rebuttal testimony . . . in which [the opposing party's] witnesses have presented an alternative theory or new facts or have otherwise created a need for a particularized response." *Id.*

Defendants contend that Drissel was a proper rebuttal witness because his testimony was necessary to counteract testimony from George Mullen. This argument is flawed for two reasons.

First, Drissel's testimony was not precisely directed to rebutting Mullen's testimony. Mullen was directly supervised by Labrice. Mullen's testimony concerned Mullen's experience being supervised by Labrice and his opinion of Labrice as his direct supervisor. Drissel, by contrast, was not supervised by Labrice and could not have testified to the experience of working under Labrice's supervision. Drissel's proposed testimony concerned Drissel's opinion of Labrice's performance in other contexts, including in Captains' meetings with Inspector

Bachmayer.  Mullen did not testify concerning Labrice's work performance in such contexts; Drissel's testimony would not have rebutted that of Mullen.

Second, Mullen's testimony was consistent with Labrice's theory of the case and did not "present[] an alternative theory or new facts or . . . otherwise create[] a need for a particularized response." *Id.*  Nothing about Mullen's testimony or any other testimony offered at trial should have surprised Defendants such that rebuttal evidence was needed "to prevent manifest injustice." *Upshur v. Shepherd*, 538 F. Supp. 1176, 1180 (E.D. Pa. 1982).  Rather, Defendants' only purpose in calling Drissel as a witness was "to contradict an expected and anticipated portion" of Labrice's case-in-chief, i.e., Labrice's argument that his work performance was satisfactory.  *Morgan*, 606 F.2d at 556.

If defense counsel wanted to present Drissel as additional witness to strengthen Defendants' theory that Labrice's work performance was deficient, Defendants should have followed the proper disclosure rules and presented Drissel as a witness during Defendants' case-in-chief.  *See Upshur*, 538 F. Supp. at 1180.  But Defendants failed to do so.  Thus, Drissel and his testimony "which properly belongs in [Defendants'] case-in-chief but [was] first introduced in rebuttal may be rejected, so as to avoid prejudice to [Labrice] and to ensure the orderly presentation of proof." *Emerick v. U.S. Suzuki Motor Corp.*, 750 F.2d 19, 22 (3d Cir. 1984).  Accordingly, the Court properly rejected Defendants' request to use Drissel as a rebuttal witness.

The Court properly granted Labrice's motion to preclude Defendants from calling Drissel as a witness, and the Court properly denied Defendants' subsequent request to call Drissel in rebuttal.

### 3.  <u>Voir Dire</u>

Defendants' final argument that the Court abused its discretion is that the Court erred when

the Court precluded certain follow-up questions during *voir dire*.

"The purpose of the *voir dire* is to both enable the court to select an impartial jury and assist counsel in exercising peremptory challenges." *Butler v. City of Camden, City Hall*, 352 F.3d 811, 814 (3d Cir. 2003) (internal quotation marks and brackets omitted). "[T]he trial judge is necessarily vested with broad discretion in determining the manner and scope of the questioning," and "an abuse of discretion will only be found where the district court's *voir dire* examination is so general that it does not adequately probe the possibility of prejudice." *Id.* at 815 (internal quotation marks omitted). "Generally, a district judge need not pursue any specific line of questioning on *voir dire*," as "[a]ny method is sufficient provided it is probative on the issue of impartiality." *Waldorf v. Shuta*, 3 F.3d 705, 710 (3d Cir. 1993). Ultimately, "the law requires that the district court make those 'inquiries relevant to the discovery of actual bias' and which, in the final analysis, satisfy 'the essential demands of fairness.'" *Butler*, 352 F.3d at 819.

Here, both parties were asked to file up to fifteen proposed *voir dire* questions before trial. *See* Scheduling Order, ECF No. 91, at 2. Among Defendants' proposed questions was the following question: "Do you feel that an employer should be required to prove that it did nothing wrong if it has been sued by an employee?" ("Question 15"). Ex. 2, Defendants' Pretrial Memorandum, ECF No. 75-2 ¶ 15.

At the final pre-trial conference, the parties had the opportunity to place objections to the opposing side's proposed questions, and no objections were made concerning Question 15. *See* Final Pre-Trial Conference Transcript, ECF No. 170, at 12-13.

At trial, the Court asked introductory *voir dire* questions and then permitted the parties' lawyers themselves to examine the prospective jurors. Defendants asked Question 15, and the Court called counsel to sidebar. The Court decided to preclude follow-up questions concerning

Question 15 because the questioning was improper and would not be "relevant to the discovery of actual bias . . . ." *Butler v. City of Camden, City Hall*, 352 F.3d 811, 819 (3d Cir. 2003). The Court reminded counsel that it is the Court's duty to instruct the jury on the law, and the Court would charge the jury on what each party is required to prove.[6] Subsequently, the Court instructed the jury on the substantive law, the burdens of proof, and the jury's duty to apply the law to the facts, even if they personally disagree with it.[7]

The Court properly precluded follow-up questions on Question 15 because further questioning would not have been probative of prejudice or impartiality. Prospective jurors' opinions on what an employer must prove or not prove under the law was not a "relevant subject matter designed to elicit a disqualifying prejudice," as Court would instruct the jury to apply the law as charged regardless of any personal beliefs or disagreement. *Butler*, 352 F.3d at 816. The Court's decision to preclude follow-up questions on Question 15 did not prevent the Court from "mak[ing] those inquiries necessary to satisfy both its duty to select an impartial jury and allow for intelligent exercise of peremptory challenges." *Id.* at 815. Thus, the preclusion of follow-up questions on Question 15 comported with the "essential demands of fairness" and was within the Court's discretion. *Id.*

No prejudicial errors of law were made by using the mixed-motive instructions, by precluding Drissel's testimony, and by precluding certain follow-up questions during *voir dire*.

---

[6] *See* Transcript Day 1 of Jury Selection, ECF No. 163, at 55:22-57:6 (MR. WEHR: "[A]nybody that answered yes on 15 . . . We need to follow up with all of them." THE COURT: "No, I'm going to . . . tell them what the law is . . . . [Question 15] was frankly an impermissible question . . . . I'm going to charge them [on] that.").

[7] *See* Transcript Day 1, ECF No. 164, at 34-35 ("My role is to be the Judge of the law. I make whatever legal decisions have to be made, during the course of the trial. And I will explain to you the legal principles that must guide you in your decisions. You must follow that law, whether you agree with it, or not."); Transcript Day 6, ECF No. 146, at 21 ("Your . . . duty is to take the law that I give you, apply it to the facts, and decide if, under the appropriate burden of proof, the parties have established their claims. It is my job to instruct you about the law. And you are bound by the oath that you took at the beginning of the trial to follow the Instructions that I give you, even if you personally disagree with them.").

Accordingly, the Court will deny a new trial on this basis.

### iii.   Whether the Court's activity at sidebar justifies a new trial

Defendants' third argument for why they are entitled to a new trial is that the Court's activity at sidebar tainted the verdict.  For the following reasons, the Court's conduct does not justify a new trial.

During trial, the Court occasionally called the lawyers to sidebar to speak to them privately without the jury hearing their conversation.  To conduct these private conversations, the Court remained on the bench platform and positioned itself on the side of the bench farthest from the jury, and the lawyers stood at the far side of the bench below the platform.  Throughout every sidebar conversation, the Court utilized its white noise system to ensure complete privacy and prevent the jury from hearing.

At the start of trial, the Court explained to the jury why these sidebar conversations may be necessary,[8] and the Court instructed that the jury must not consider the Court's decision to conduct a sidebar conference as "any indication of [the Court's] opinion of the case, or what [the jury's] verdict should be."  Transcript Day 1, ECF No. 164, at 38:09-11.

On the fourth day of trial, defense counsel requested a sidebar conversation.  *See* Transcript Day 4, ECF No. 144, at 186:09 ("MS. NEARY: I was thinking we should go to sidebar.").  The Court followed its standard sidebar procedure—the Court and the lawyers stood on the side of the bench farthest from the jury and the Court turned on the white noise machine to ensure the conversation was absolutely insulated from the jury's hearing.  During this sidebar conversation, the Court asked defense counsel to step aside so that the Court could briefly speak to plaintiff's

---

[8] *See* Transcript Day 1, ECF No. 164, at 37:17-38:07 ("THE COURT: During the trial, it may be necessary for me to talk with the Lawyers out of your hearing . . . [b]y having what's called a bench conference. If that happens, please be patient. We are not trying to keep important information from you. These conferences are necessary for me to fulfill my responsibility . . . .).

counsel alone.  Defense counsel complied with this request without objection.  The Court then engaged in a brief, off-the-record conversation with plaintiff's counsel concerning the possibility of settlement.  In view of the jury, individuals in the public area of the courtroom then had a conspicuous conversation with defense counsel.  After the sidebar conversation ended and the Court retook the bench, defense counsel made the following statement into the microphone and in front of the jury: "Your honor, I've just been instructed just to say, for the record, there's just been a conversation between you and Plaintiff's Counsel without the presence of Defendants' Counsel." *Id.* at 188:18-21.

The Court asked defense counsel, "did you object," and defense counsel responded "[n]ot in the moment, no," *id.* at 189:13-14.  Defense counsel then explained she "was told to do it right now . . . [a]fter conversation with [her] Colleagues."  *Id.* at 189:04-09.  The Court responded, "I don't know who's back there [in the public area of the courtroom].  But you're trying the case." *Id.* at 189:11.  The Court explained that, because defense counsel failed to object when the request was made at sidebar, defense counsel had "no basis for anything going into the record."  *Id.* at 189:13-16.

To remedy the disruption caused by defense counsel and their colleagues, the Court called all counsel back up to sidebar.  Again, the Court followed its standard sidebar procedure—the Court and the lawyers stood on the side of the bench farthest from the jury and the Court turned on the white noise machine to ensure the conversation was absolutely insulated from the jury's hearing.  The Court explained to defense counsel that the off-the-record conversation with plaintiff's counsel was an attempt to settle the case.[9]

---

[9] Ironically, the Court conducted this sidebar conversation to try and move Labrice towards settlement based on the strength of Defendants' case.  After 43 years as a trial judge, the Court will avoid this approach when attempting to aid settlement.

Still at sidebar and completely shielded from the jury's hearing, defense counsel emphasized that they did not intend to imply to the jury that the Court did anything improper. The Court responded, "[w]ell, then . . . you don't say it in front of the jury if you didn't. That is disgusting." *Id.* at 191:25-192:05. The Court then ended the sidebar conversation and returned to the bench.

Defendants do not allege that the substance of the Court's off-the-record conversation with plaintiff's counsel was inappropriate. Rather, Defendants argue that the above-described event was prejudicial because "it would mostly likely be viewed by the jury as the Court favoring Plaintiff's counsel and resenting Defendant's counsel . . . ." Defendants' Motion, ECF No. 157, at 39-40.

 "[B]ias and improper conduct by a trial judge may be grounds for a new trial if a party was unfairly prejudiced. Active participation by a district judge in trial proceedings, however, is in itself neither improper nor unfair." *Holbrook v. Lykes Bros. S.S. Co., Inc.*, 80 F.3d 777, 788 (3d Cir. 1996) (quoting *Desjardins v. Van Buren Community Hospital*, 969 F.2d 1280, 1281 (1st Cir. 1992)).

The Court's conduct did not unfairly prejudice Defendants. The above-described sidebar conversations were brief and completely insulated from the jury's hearing. Conducting such conversations "falls squarely within the judge's role of controlling the court proceedings, and cannot be fairly characterized as prejudicing [Defendants] or [evincing resentment towards] counsel." *Id.* at 788.

The Court's jury instructions also prevented any prejudice or bias that may have stemmed from this event. The Court instructed that the jury "should not take anything [the Court] may say or do during the trial as indicating what [the Court] think[s] of the evidence . . . or what [the]

verdict should be." Transcript Day 1, ECF No. 164, at 34:19-21. And, concerning conversations at sidebar, the Court instructed that the jury must not consider the Court's decision to conduct a sidebar conference as "any indication of [the Court's] opinion of the case, or what [the jury's] verdict should be," *id.* at 38:09-11. These instructions were sufficient to quell any potential bias, and Defendants failed to request any additional curative instructions.

Because Defendants were not prejudiced, the Court will deny a new trial on this basis.

### iv. <u>Whether the statement by plaintiff's counsel justifies a new trial</u>

Defendants' fourth argument for why they are entitled to a new trial is that an improper statement by plaintiff's counsel during her closing argument tainted the verdict and justifies a new trial. For the following reasons, plaintiff's counsel's isolated remark does not justify a new trial.

During her closing argument, plaintiff's counsel stated: "Chief Inspector Flacco and Inspector Bachmayer sat right there, after taking an oath to tell the truth, and they lied to your face. When someone lies under oath, that's considered perjury. And you're truly able to wholly disbelieve everything they said." Transcript Day 6, ECF No. 146, at 64:20-25. After plaintiff's counsel completed the remainder of her otherwise unobjectionable closing argument, Defendants objected to this statement. *See id.* at 81:02-07.

"[T]he trial judge has considerable discretion in determining whether conduct by counsel is so prejudicial as to require a new trial." *Draper v. Airco, Inc.*, 580 F.2d 91, 94 (3d Cir. 1978). "[J]urors must ultimately base their judgment on the evidence presented and the rational inferences therefrom," so "there must be restraints against blatant appeals to bias and prejudice." *Id.* at 95. "[N]ot all improper remarks," however, "will engender sufficient prejudice to mandate the granting of a new trial. Our test is whether the improper assertions have made it 'reasonably probable' that the verdict was influenced by prejudicial statements." *Fineman v. Armstrong World*

*Industries, Inc.*, 980 F.2d 171, 207 (3d Cir. 1992). "Often . . . a combination of improper remarks are required to persuade us of prejudicial impact," *id.* at 207, as "an isolated improper remark will not support the grant of a new trial," *id.* at 208 (citing *Salas v. Wang*, 846 F.2d 897 (3d Cir. 1988)).

Here, the nature of plaintiff's counsel's isolated remark did not make it reasonably probable that the verdict was influenced by prejudicial statements. Defendants only identify one allegedly problematic remark by plaintiff's counsel, and this lone remark was not a serious violation of the rules of proper argument. *Contra Draper v. Airco, Inc.*, 580 F.2d 91, 96-97 (3d Cir. 1978) ("Where . . . a closing address to the jury contains such numerous and serious violations of so many rules of proper argument as occurred here, we must conclude that it is more than 'reasonably probable' that the verdict was influenced by the prejudicial statements.").

Additionally, the Court's jury instructions prevented any potential prejudicial influence from counsel's statement. The Court instructed that "statements, arguments, and questions of the lawyers for the parties" are "not evidence," Transcript Day 1, ECF No. 164, at 38:18-19, and "closing arguments are not evidence," *id.* at 43:11-12. "The district court instructed the jury throughout the trial that statements of counsel do not constitute evidence. The jury heard [the] isolated comment[] in the context of an otherwise proper summation and with the benefit of the court's instructions," and "[a] new trial is not warranted on this basis." *Anastasio v. Schering Corp.*, 838 F.2d 701, 706 (3d Cir. 1988) (internal citations omitted).

To the extent that Defendants argue that a new trial is warranted because the Court failed to provide an additional curative instruction, this claim is meritless because Defendants did not even request a curative instruction. *See Edwards v. Tice*, 2020 U.S. Dist. LEXIS 197195, at *16 (E.D. Pa. Oct. 21, 2020) ("[T]he claim that the trial court erred in not giving a curative instruction is meritless because trial counsel did not request one."). As the adage goes: if you don't ask, you

don't get.

Plaintiff's counsel's statement did not make it reasonably probable that the verdict was influenced by prejudicial statements, so the Court will not grant a new trial on this basis.

### v.  <u>Whether the jury's verdict is inconsistent</u>

Defendants' final argument for why they are entitled to a new trial is that the jury's verdict is irreconcilably inconsistent.

"Inconsistent general verdicts may constitute grounds for ordering a new trial." *Monaco v. City of Camden*, 366 Fed. Appx. 330, 331 (3d Cir. 2010) (citing *Mosley v. Wilson*, 102 F.3d 85, 91 (3d Cir. 1996)).  "[I]f verdicts are genuinely inconsistent and if the evidence might support either of the 'inconsistent' verdicts, the appropriate remedy is ordinarily, not simply to accept one verdict and dismiss the other, but to order an entirely new trial." *Mosley v. Wilson*, 102 F.3d 85, 91 (3d Cir. 1996) (quoting *Los Angeles v. Heller*, 475 U.S. 796 (1986) (Stevens, J. dissenting)). However, "in certain circumstances, a court retains the authority, even in a civil case, to allow an apparently inconsistent verdict to stand." *Id.*  Ultimately, "a court may order a new trial based on inconsistent verdicts only if 'no rational jury could have brought back the verdicts that were returned.'" *Monaco*, 366 Fed. Appx. at 331 (quoting *Pearson v. Welborn*, 471 F.3d 732, 739 (7th Cir. 2006)).

Defendants identify four alleged contradictions, and the Court discusses each in turn.  *See* Defendants' Motion, ECF No. 157, at 47-49.  For the following reasons, the verdicts are not "genuinely inconsistent," *Mosley*, 102 F.3d at 91, and a "rational jury could have brought back the verdicts that were returned," *Monaco*, 366 Fed. Appx. at 331.  Thus, the Court will not grant a new trial on this basis.

### 1.  Counts 2 and 4

As the Court explained in its May 27, 2025, opinion on remedies, the jury's verdicts finding for Labrice on Count 2 (retaliation under the ADA and the PHRA) and finding for Defendants on Count 4 (FMLA retaliation) are not inconsistent.  *See* Remedies Opinion, ECF No. 159, at 8-9. "FMLA retaliation and ADA retaliation are distinct claims, that arise under distinct laws, and contain distinct elements. A reasonable jury could [well] find for [Labrice] on one claim without finding for him on the other—just as the jury did here." *Id.* at 8.

### 2.  Counts 1 and 2

As the Court explained in its May 27, 2025, opinion on remedies, the jury's verdicts on Count 1 (disability discrimination under the ADA and the PHRA) and Count 2 (retaliation under the ADA and the PHRA) are not inconsistent.  *See id.*  "On Count 1, the jury found that each Defendant proved they would have made the same decision even if Mr. Labrice's disability had played no role in the employment decision.  This does not contradict the jury's finding in favor of Mr. Labrice on Count 2, as the claims are distinct.  ADA disability discrimination concerns animus towards Mr. Labrice's disability whereas ADA retaliation concerns retaliation for Mr. Labrice's utilization of medical leave." *Id.*

### 3.  Counts 1 and 4

The jury's verdicts on Count 1 (disability discrimination under the ADA and the PHRA) and Count 4 (FMLA retaliation) are not inconsistent.  Defendants argue that, on both counts, "the jury was asked the same essential question, under the same mixed-motive standard—was the decision to reject [Labrice] from probation motivated by animus towards his protected trait or protected activity?"  Defendants' Motion, ECF No. 157, at 48.  This is incorrect.

On Count 1, the jury had to decide whether Labrice proved four elements, including whether Labrice's disability was a motivating factor in Defendants' decision to demote Labrice. *See* Final Jury Instructions, ECF No. 121, at 8.  By contrast, on Count 4, the jury had to decide whether Labrice proved five elements, including whether Labrice's taking leave under the FMLA was a motivating factor in Defendants' decision to demote Labrice. *See id.* at 17.  The "essential questions" of these two elements are distinct—Count 1 concerns Defendants' animus towards Labrice's disability, whereas Count 4 concerns Defendants' retaliation for Labrice's exercise of his rights under the FMLA.  Again, a reasonable jury could well find for Labrice on one claim without finding for him on the other—just as the jury did here.

### 4.  Counts 2 and 3

Finally, the jury's verdicts on Count 2 (retaliation under the ADA and the PHRA) and Count 3 (FMLA interference) are not inconsistent.[10]  Once again, these are distinct claims, that arise under distinct laws, and contain distinct elements.  On Count 3, the jury found that each Defendant proved Labrice's demotion was "for reasons unrelated to Mr. Labrice's exercise of his rights under the FMLA."  *See* Verdict Sheet, ECF No. 128, at 5-6.  This does not contradict the jury's verdicts on Count 2 because Count 2 does not concern Labrice's exercise of his rights under the FMLA.  Thus, a reasonable jury could find for Labrice on Count 2 while finding that Labrice's demotion was unrelated to Labrice's exercise of his rights under the FMLA on Count 3— especially given defense counsel's emphasis during trial on the substantive differences between unpaid FMLA leave and paid injured-on-duty leave ("IOD leave").  *See, e.g.*, Transcript Day 4, ECF No. 144, at 243:13-247:02 (questioning witness about differences between FMLA leave and

---

[10] Defendants assert that "Counts 1, 3 and 4, all contradict Count 2."  Defendants' Motion, ECF No. 157, at 48.  Given the discussion *supra* explaining why Count 2 is not inconsistent with Counts 1 and 3, the Court focuses on the alleged inconsistency between Counts 2 and 3.

IOD leave); Transcript Day 6, ECF No. 146, at 122:04-123:06 (emphasizing the differences between FMLA leave and IOD leave in defense counsel's closing argument).

Thus, the verdicts are consistent and the Court will not grant a new trial on this basis.

### III.    **Labrice's Motion**

Labrice moves to amend the judgment under Federal Rule of Civil Procedure 59(e) to add an award of compensatory damages consistent with the jury's verdict in Labrice's favor on Count 2, retaliation for taking medical leave under the ADA and the PHRA. Labrice concedes that compensatory damages are unavailable for retaliation claims under the ADA.[11] But Labrice asserts that compensatory damages are available for retaliation claims under the PHRA, and thus, such an award is appropriate on Count 2 under the PHRA. In the alternative, Labrice moves for a new trial under Federal Rule of Civil Procedure 59(a) solely on the issue of compensatory damages.[12] *See* Labrice's Motion, ECF No. 156.

### A. Whether the judgment must be amended under Rule 59(e)

"A proper Rule 59(e) motion . . . must rely on one of three grounds: (1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct clear error of law or prevent manifest injustice." *Lazaridis v. Wehmer*, 591 F.3d 666, 669 (3d Cir. 2010) (internal citations omitted). However, "Rule 59(e) . . . may not be used . . . to raise arguments . . . that could have been raised prior to the entry of judgment," *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 485 n.5 (2008) (internal quotation marks omitted).

---

[11] Plaintiff's counsel affirmed this position at the Court's June 11, 2025, hearing on post-trial motions.

[12] At the Court's June 11, 2025, hearing on post-trial motions, plaintiff's counsel clarified the contours of Labrice's request. Labrice is not requesting that the Court empanel a new jury to consider the issue of compensatory damages under Count 2. Rather, Labrice asks only that the Court use its discretion to award an appropriate amount of compensatory damages for retaliation under the PHRA.

Labrice moves to amend the judgment, arguing it was an error of law to disallow the jury from awarding compensatory damages on Count 2 under the PHRA. *See* Labrice's Motion, ECF No. 156, at 4. Labrice, however, failed to raise this argument prior to the entry of judgment.[13] Thus, Rule 59(e) "may not be used" to raise the argument now. *Exxon Shipping Co.*, 554 U.S. at 485 n.5.

Labrice had many opportunities to raise the argument but never did.

Labrice could have but failed to raise this argument at the Court's December 9, 2024, final pre-trial conference. At the conference, the Court asked the parties for their positions concerning any relevant differences between the ADA and the PHRA, given that "an analysis of an ADA claim applies equally to a PHRA claim." *Eshelman v. Agere Systems, Inc.*, 554 F.3d 426, 433 n.3 (3d Cir. 2009) (internal quotation marks omitted).[14] When the Court asked the parties how damages differed under the two laws, plaintiff's counsel responded only that "emotional distress damages under the PHRA are uncapped," whereas emotional distress damages under the ADA are capped at $300,000.00. Final Pre-Trial Conference Transcript, ECF No. 170, at 3:08-09.[15] Counsel failed, however, to assert that the two laws provide different remedies for retaliation claims.

Labrice also could have but failed to raise this argument when submitting revisions to the Court's proposed jury instructions. At the Court's April 11, 2025, charging conference, the Court

---

[13] Civil Judgment was entered on April 18, 2025, *see* ECF No. 131, and Labrice filed his Post-Trial Motion on May 16, 2025, *see* ECF No. 156.

[14] *See also Gagliardo v. Connaught Laboratories, Inc.*, 311 F.3d 565, 568 n.2 (3d Cir. 2002) ("[L]iability under the PHRA is premised upon language similar to that of the ADA and . . . that language is generally interpreted in accordance with the judicial construction of the ADA.").

[15] *See* Final Pre-Trial Conference Transcript, ECF No. 170, at 2:22-3:07 ("MS. BARKER: [I]n conjunction with the ADA, the mirroring PHRA . . . ." THE COURT: "Yes . . . and what is the difference? That only has to do with damages, isn't that correct? MS. BARKER: Yes . . . . THE COURT: What do you claim to be the difference? MS. BARKER: Emotional distress, damages under the PHRA are uncapped and to my knowledge that's really the main difference in the two.").

instructed the parties to jointly review the proposed jury instructions and submit to the Court a revised copy that flagged the parties' disagreements and each side's proposed changes.  In the parties' revised copy submitted to the Court on April 12, 2024, Labrice failed to object or propose changes to the following instruction: "If Mr. Labrice proves his first claim of disability discrimination . . . Mr. Labrice may be entitled to either compensatory or nominal damages.  This is the only claim for which you will consider compensatory damages . . . ."  Correspondence and Filings to the Court from 04/12/2025 to 04/13/2025, ECF No. 122, at 22.[16]  When given the opportunity to object to the explicit instruction that Count 1 is the "only claim for which [the jury] will consider compensatory damages," *id.*, Labrice failed to raise the argument that compensatory damages should also be available on Count 2 under the PHRA.

Plaintiff's counsel asserts that she raised the issue when she submitted a proposed verdict sheet requesting that the interrogatory on compensatory damages be located below Count 2, rather than below Count 1.  *See* Labrice's Motion, ECF No. 156, at 6-7.  The Court disagrees.  "[A] fleeting reference or vague allusion to an issue will not suffice to preserve it . . . Rather, a party must unequivocally put its position before the trial court at a point and in a manner that permits the court to consider its merits."  *United States v. Dupree*, 617 F.3d 724, 728 (3d Cir. 2010) (internal citations, brackets, and quotation marks omitted).  Read in context, Labrice's submission constitutes, at best, a vague allusion to the issue, and it failed to put Labrice's position before the Court.

In the proposed verdict sheet submitted to the Court, plaintiff's counsel never argued that

---

[16] The Court instructed Labrice to indicate his proposed alterations in italicized font and Defendants to indicate their proposed alterations in bolded font.  *See* ECF No. 122, at 1 (affirming that Labrice's proposed changes are marked in italicized font in the revised submission).  In the revised instructions submitted to the Court by the parties on April 12, 2025, Labrice did not indicate any disagreement with this portion of the proposed instructions.  *See id.* at 22 (no changes or italicized font made to the relevant portion of the instructions).

compensatory damages are available on Count 2 because of a distinction between the PHRA and the ADA.[17]  Plaintiff's counsel left a comment on the compensatory damages interrogatory, stating only that "Defendants submit that Plaintiff is not entitled to compensatory damages (or any monetary damages) for his retaliation claim under the ADA/PHRA," and the Court should "see the parties' email discussing this issue." *Id.* at 6.

In the email, the parties "attach[ed] a word document that outline[d] [their] 5 disputes." *Id.* at 1 (parties' email); *see also id.* at 12-14 (parties' document outlining disputes).  In the document, however, plaintiff's counsel failed to argue that the PHRA provides for compensatory damages on Count 2.  Concerning Count 2, the document only contained the following statement: "The parties dispute whether [Labrice] has asserted a claim for retaliation under the PHRA. This is material because if [Labrice] does not have such a claim, then the ADA retaliation only applies to the City of Philadelphia, whereas it would apply to all defendants under the PHRA." *Id.* at 13.

This argument is distinct from the argument that Labrice now seeks to raise.  In the document outlining the parties' disagreement on Count 2, Labrice failed to make the argument that—unlike the ADA—the PHRA allows for compensatory damages on Count 2.  Rather, the submission indicated to the Court only that, on Count 2, the PHRA is "material" because the PHRA applies to the individual defendants. *Id.*

Further affirming this understanding, the parties jointly asserted that jury instructions on the PHRA may be unnecessary because "[t]he parties agree that [the PHRA claims] mirror the ADA claims except to the extent they apply to the individual defendants and to the extent that Defendants submit that no PHRA retaliation claim has been plead or litigated . . . ." *Id.* at 14.  This assertion is dispositive.  Rather than arguing that the PHRA differs from the ADA because the

---

[17] *See* Additional Correspondence from 04/12/2025 to 04/13/2025, ECF No. 169, at 2-11 (proposed verdict sheet).

PHRA provides for compensatory damages on Count 2, Labrice explicitly "agree[d]" that the PHRA claims "mirror the ADA claims except to the extent they apply to the individual defendants . . . ." *Id.*

Thus, Labrice's proposed verdict sheet and accompanying explanation failed to properly raise the argument that compensatory damages are available on Count 2 under the PHRA, even though compensatory damages are unavailable on Count 2 under the ADA. Labrice failed to "unequivocally put [his] position before the trial court at a point and in a manner that permits the court to consider its merits." *United States v. Dupree*, 617 F.3d 724, 729 (3d Cir. 2010) (quoting *Shell Petroleum, Inc. v. United States*, 182 F.3d 212, 218 (3d Cir. 1999)). The proposed verdict sheet and accompanying explanation lacked any argument concerning the availability of compensatory damages for retaliation claims under the PHRA when compensatory damages are precluded under the mirroring ADA. Thus, Labrice failed to raise this argument prior to the entry of judgment, and "Rule 59(e) . . . may not be used" to raise the argument now. *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 485 n.5 (2008).[18]

### B. Whether Labrice is entitled to a new trial

As discussed *supra*, after a jury trial the Court may grant a new trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court." FED. R. CIV. P. 59(a)(1)(A). Like Rule 59(e) motions, "reargument 'should not be used as a means to argue new

---

[18] In addition to finding that Labrice failed to adequately raise this argument before the entry of judgment, the Court finds that—even if Labrice had raised the issue—it would be inappropriate to amend the judgment to award compensatory damages. To recover compensatory damages, "a plaintiff must show 'a reasonable probability rather than a mere possibility that damages due to emotional distress were in fact incurred [as a result of an unlawful act].'" *Gagliardo v. Connaught Laboratories, Inc.*, 311 F.3d 565, 573 (3d Cir. 2002). Here, Labrice failed to present sufficient evidence to prove compensatory damages under Count 2. *See* Transcript Day 2, ECF No. 142, at 113 (Labrice's cursory discussion of the emotional impact of Defendants' actions). Thus, if the Court were reversed on its ruling that Labrice failed to raise this argument prior to the entry of judgment, the Court would nonetheless find that it would be inappropriate to amend the judgment and award compensatory damages based on the evidence presented at trial.

facts or issues that inexcusably were not presented to the court in the matter previously decided.'" *Bhatnagar v. Surrendra Overseas Ltd.*, 52 F.3d 1220, 1231 (3d Cir. 1995) (quoting *Brambles USA, Inc. v. Blocker*, 735 F. Supp. 1239, 1240 (D. Del. 1990)).  Thus, the Court will deny Labrice's request for a new trial for the same reason the Court denies Labrice's request to amend the judgment—Labrice failed to properly raise this argument prior to the entry of judgment.

In addition, the Court finds that—even if Labrice had raised the issue—the Court would deny compensatory damages based on the insufficient evidence presented at trial.[19]

## IV.    <u>Conclusion</u>

For the foregoing reasons, the Court will **DENY** Labrice's Post-Trial Motion (ECF No. 156), and the Court will **DENY** Defendants' Post-Trial Motion (ECF No. 157).


_s/ANITA B. BRODY, J.___
ANITA B. BRODY, J.

---

[19] As Plaintiff's counsel explained at the Court's June 11, 2025, hearing on post-trial motions, Labrice does not seek a new jury trial to litigate the issue of compensatory damages under Count 2.  Rather, Labrice asks only that the Court use its discretion to award an appropriate amount of compensatory damages for retaliation under the PHRA.  Because Labrice presented insufficient evidence to prove compensatory damages at trial, if the Court were reversed on its ruling that Labrice failed to raise this argument prior to the entry of judgment, the Court would use its discretion to award $0.00 in compensatory damages for retaliation under the PHRA.